Filed 2/13/14  In re I.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re I.S., a Person Coming Under the Juvenile Court Law. | B249551 |
| | (Los Angeles County Super. Ct. No. CK92016) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.S. et al., <br><br> Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant A.S.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant R.L.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \*

A.S. (father) and R.L. (mother) appeal the order terminating their parental rights to their son I.S., who is now three and one-half years old. Father and mother both contend on appeal that reversal is mandated because the juvenile court failed to comply with the notice requirements of the Indian Child Welfare Act of 1978 (ICWA). (25 U.S.C. § 1901 et seq.) Father also contends the court erred in denying his petitions pursuant to Welfare and Institutions Code, section 388,[1] arguing he demonstrated changed circumstances that justified his request for reunification services, and that the court erred in finding the beneficial relationship exception to termination of his parental rights did not apply. Father also asserts a violation of fundamental federal rights. Finding no merit to father's or mother's appeal, we affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only the facts pertinent to the issues raised by mother's and father's appeals.

When he was 20 months old, I.S. came to the attention of the Los Angeles County Department of Children and Family Services (the Department) on February 22, 2012, as a result of the arrest of his parents. That day, the Los Angeles County Sheriff's Department had executed a search warrant at the family home, where law enforcement officers found methamphetamine, marijuana, methadone and a crack pipe within reach of I.S. under a sofa cushion where he was sleeping. The Department detained I.S. that day and placed him with his paternal aunt.

Father has a lengthy criminal history dating back to 1981, including convictions for grand theft, evading a police officer and driving on a suspended license, and multiple convictions for being under the influence of controlled substances, drug possession and drug sales. During the dependency proceedings, father negotiated a plea agreement in the criminal case that brought I.S. to the attention of the Department, pleading no contest to possession of a controlled substance and child endangerment. Pursuant to the plea agreement, the criminal court sentenced father to two years in county jail. Although not

---

[1] All further undesignated section references are to the Welfare and Institutions Code.

2

pertinent to her appeal, we note that mother was also criminally prosecuted and sentenced to three years in county jail.

The Department filed a petition pursuant to section 300, subdivisions (b) and (j), alleging that the parents created an endangering home environment by exposing I.S. to illicit drugs and drug paraphenalia. At the detention hearing, mother denied any Indian ancestry but father completed an ICWA form stating I.S. might be eligible for membership in the Navajo tribe. The court found father was I.S.'s presumed father and asked father about his familial membership in the Navajo tribe. As requested by the Department, we take judicial notice of a related nonoperative writ (case No. B241624), which includes the reporter's transcript of the detention hearing. Father told the court he thought I.S.'s paternal grandfather, Octaviano S., was a member of a Navajo tribe in New Mexico, but father did not have any further identifying information about I.S.'s grandfather. The court ordered the Department to investigate father's American Indian heritage and give ICWA notice.

Mother and father settled the allegations of the dependency petition in mediation, and on May 3, 2012, the court sustained two amended counts that father and mother created an endangering home environment by father's possession of drugs and drug paraphenalia and mother's unresolved history of substance abuse. Mother and father agreed that I.S. would remain placed with his paternal aunt.

Based on what little information father had provided, the Department served ICWA notices. The Department mailed ICWA notices to the regional office of the Bureau of Indian Affairs (BIA) in Sacramento, the Secretary of the United States Department of Interior, the Navajo Regional Office of the BIA, the Ramah Navajo Chapter in Ramah, New Mexico, the Navajo Nation in Window Rock, Arizona, and the Colorado River Tribal Council in Parker, Arizona. The ICWA notices included accurate identifying information regarding I.S., mother and father. The notices identified I.S.'s paternal grandparents: as to paternal grandmother, the notices included her name, a partial current street address, birthdate and place, and stated no Navajo membership was claimed through her; and as to paternal grandfather, the notices included his name, that he was born in Bernal or Bernalio, New Mexico, that he died in 1993 in New Mexico, and

that he was a member of a Navajo tribe. The notice said his former address and birthdate were unknown. The notices also identified I.S.'s paternal great-grandparents: as to paternal great-grandmother, the notices included her name and that she was born, lived and died in Santa Fe, New Mexico, stated no other information was known, and no tribal membership was claimed as to her; and as to paternal great-grandfather, the notices included his name, that he died in Santa Fe, New Mexico, that he was a member of a Navajo tribe, and that no other information was known.

The Colorado River Tribal Council and the Navajo Nation responded to the ICWA notices, stating I.S. was not eligible for enrollment and declining to intervene in the proceedings. Neither tribe requested the Department to forward additional information. The United States Department of Interior acknowledged the official notice received by the BIA, and the BIA responded with a letter acknowledging receipt of the notice and indicating no further action would be taken by BIA since the Navajo Nation had been notified. The notices, certified mail receipts, and responses were filed with the court.

At the disposition hearing on May 23, 2012, the juvenile court found the ICWA notices were adequate and that ICWA did not apply. The court ordered I.S. removed from his parents and placed with his paternal aunt and ordered no reunification services for either mother or father pursuant to section 361.5, subdivision (e)(1) since they would remain incarcerated throughout the reunification period provided by law.

I.S.'s paternal aunt wanted to adopt him. On December 5, 2012, a home study was completed and approved for the paternal aunt to become I.S.'s prospective adoptive mother, in the event parental rights were terminated. About a month later, father filed a section 388 petition stating he expected to be released from custody soon and asking the court to provide him reunification services. The court summarily denied the petition.

Father was released from jail on February 11, 2013. In response to his request, the Department gave father referrals to substance abuse programs. Father enrolled in a three-to-six month residential substance abuse treatment program on February 25, 2013. On April 10, 2013, father filed another section 388 petition seeking reunification services, on the ground he was out of custody and enrolled in a substance abuse program, and while incarcerated, he participated in programs available to him. Father had monitored visits

with I.S. for two hours on March 9, for 20 minutes on March 31, and one and one-half hours on April 7. Throughout his incarceration and upon his release, father also spoke to the paternal aunt or to I.S. on the telephone as often as possible. The court granted a hearing on the petition.

The court heard father's section 388 petition and then held a section 366.26 hearing on May 13 and 15, 2013. The court received numerous reports and documents offered by the Department and by father. The court heard the testimony of father's drug and alcohol counselor and his sponsor, as well as father's testimony, concerning his recent efforts to maintain sobriety, his own upbringing and new understanding of proper parenting, and his twice-weekly visits with I.S. for two hours each visit. This was the first time in 30 years that father had been in active recovery. Father did not ask for custody of I.S. at that time and believed it was better for I.S. to remain with his paternal aunt than in a foster home. He did not offer any new information regarding his claimed Navajo heritage. The Department and I.S.'s counsel argued the court should deny father's 388 petition because of the early stage of father's rehabilitation after a lengthy period of drug abuse, father was not in a position to care for a three-year-old child, and I.S. had a stable and regular schedule in the paternal aunt's home where he had lived half his young life and was doing well.

The juvenile court commended father for his recovery efforts but denied the section 388 petition because father had not met his burden to demonstrate either that there were changed circumstances or that it was in I.S.'s best interest for the court to offer reunification services to father, since that would only disrupt the permanency available in the paternal aunt's home. After hearing further testimony and argument, including the testimony of the paternal aunt that father's visits with I.S. had been appropriate but all had been monitored, the juvenile court found, by clear and convincing evidence, that I.S. was adoptable and the beneficial relationship exception did not apply. The court terminated mother's and father's parental rights. This appeal followed.

## DISCUSSION

### 1.     No Reversible Error in ICWA Notices

Father and mother both contend the juvenile court and the Department failed to discharge their continuing duty to inquire about whether I.S. was an Indian child within the meaning of ICWA because the Department failed to interview other paternal relatives.  However, neither father nor mother offers any information that any paternal relative has or may have any information to offer.

The notice requirements of ICWA serve the salient purpose of protecting Indian children and providing a mechanism for the maintenance of tribal and familial ties for those Indian children faced with the prospect of placement in the foster care system. (25 U.S.C. § 1901; see also *In re Desiree F*. (2000) 83 Cal.App.4th 460, 469.)  The threshold of information necessary to trigger ICWA notice requirements is low.  (*In re Gabriel G*. (2012) 206 Cal.App.4th 1160, 1165 [ICWA triggered where mother denied heritage, but father claimed possible Cherokee tribal membership through paternal grandfather, with no biographical data other than grandfather's name].)

Despite the vague scraps of information father offered, the juvenile court ordered the Department to conduct an investigation and give ICWA notice.  The Department sent ICWA notices with the limited information available to the federally recognized Navajo tribes, the regional director of the BIA and the Secretary of the United States Department of Interior.  The notices contained the available information that was required under both federal and state law.  (See generally 25 C.F.R. § 23.11(d)(3) (2012); Welf. & Inst. Code, § 224.2, subd. (a).)  The form of the notices complied with Welfare and Institutions Code section 224.2, subdivision (a)(1) through (4), including certified mail service on the appropriate tribal designees.  Mother and father do not dispute that the notices duly contained all of the required information, such as identification of the dependency proceedings, contact information for the juvenile court, and notice of the tribes' right to intervene.

They nonetheless argue the Department did not fulfill its duties because the notices did not include all of the biographical data identified in section 224.2, subdivision (a)(5)(C).  The ICWA notices contained I.S.'s name, date and place of birth, mother's

6

and father's names, current addresses and birthdates, the paternal grandparents' names, and that Navajo heritage was claimed through paternal grandfather, whose place of birth and death and year of death were provided. The notices also included the paternal great-grandfather's name, that he lived and died in Santa Fe, New Mexico, and that he was of Navajo heritage. The Department correctly and truthfully stated that all other information about the paternal grandparents and great-grandparents was unknown. Mother and father do not claim that any information actually known to the Department was not reported.

We review the trial court's finding that ICWA notice was adequate for substantial evidence. (*In re J.T.* (2007) 154 Cal.App.4th 986, 991.) Substantial compliance with the notice provisions of ICWA may be sufficient in certain circumstances. (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 566; accord, *In re I.G.* (2005) 133 Cal.App.4th 1246, 1252; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) There is no dispute the notices sent here provided to the federally recognized Navajo tribes actual notice of the proceedings and the right to intervene. (See *In re Desiree F.*, *supra*, 83 Cal.App.4th at pp. 469-470 [statute and cases applying ICWA "unequivocally require" actual notice to the tribe of both the proceedings and of the right to intervene].)

The notices similarly contained all of the biographical data *known* to the Department. Under both state and federal law, the requirement to include all specified biographical data is limited to that information which is "known" or "available." (See Welf. & Inst. Code, § 224.2, subd. (a)(5)(C); 25 C.F.R. § 23.11(b), (d)(3) (2012).) "It is essential to provide the Indian tribe with all *available* information about the child's ancestors, especially the ones with the alleged Indian heritage." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703, italics added.)

The record supports the juvenile court's determination that ICWA was satisfied and does not apply in this case. This is not a case where the Department simply failed to investigate or omitted to include information known to be available upon investigation. (*In re D.T.* (2003) 113 Cal.App.4th 1449, 1454-1455 [notices that failed to contain extensive family information which was known to social worker and included in the dispositional report did not provide meaningful notice].) Nor is this a case like *In re*

7

*Gabriel G.*, where the Department failed to serve *any* ICWA notice at all despite the father having identified his paternal grandfather by name as being a possible member of a Cherokee tribe, but later ambiguously disclaimed his own possible Indian heritage, and the record reflected no effort by the social worker to clarify the father's claim. (*In re Gabriel G.*, *supra*, 206 Cal.App.4th at p. 1168.)

Under state law, both the juvenile court and the Department have "an affirmative and continuing duty to inquire whether a child is or may be an Indian child in all proceedings identified in rule 5.480." (Cal. Rules of Court, rule 5.481(a); see also Welf. & Inst. Code, § 224.3, subd. (a).) The *continuing* duty requirement is not in ICWA, but is a duty imposed by state law that dictates a higher standard than ICWA. The "failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error." (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162; accord, *In re H.B.* (2008) 161 Cal.App.4th 115, 121-122.)

Mother and father make no attempt to argue that additional information could be provided in further ICWA notices. They argue the Department should have asked other paternal relatives for more information, but they do not claim that anyone has any more information to divulge. To this day, up through the filing of their reply briefs in this appeal, mother and father have never disclosed *any* additional information that might be included in additional ICWA notices or identified any member of father's family who has additional information to offer. They have therefore failed to show reversible error. (Cal. Const., art. VI, § 13; *In re N.E.* (2008) 160 Cal.App.4th 766, 769; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.)

Father raises three additional arguments. He contends the juvenile court abused its discretion in denying his section 388 petitions. Father further contends the court erred in terminating his parental rights by failing to acknowledge the evidence showing the existence of a beneficial parental-child relationship with I.S. Father also argues his fundamental federal right to be a parent was violated. We address each of these arguments below.

### 2. No Error in Denying 388 Petitions

"For a parent 'to revive the reunification issue,' the parent must prove that circumstances have changed such that reunification is in the child's best interest." (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.) Once reunification services to a parent have been terminated (here, father never received reunification services due to his incarceration throughout the reunification period provided by law), "a parent's interest in the care, custody and companionship of the child is no longer paramount." (*In re Angel B*. (2002) 97 Cal.App.4th 454, 464.) Instead, the court's focus, given the stage of the proceedings, is on the dependent child's need for stability and permanency. (*Ibid*.; see also *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

The juvenile court did not abuse its discretion in finding that it was not in I.S.'s best interest to provide reunification services to father after I.S. had been in the dependency system for half his short life and was thriving in the care of paternal aunt. (*In re Shirley K*. (2006) 140 Cal.App.4th 65, 71 [appellate court reviews the juvenile court's denial of a section 388 petition for abuse of discretion].) Father was in the early stages of recovery from a 30-year drug addiction and was not in a position to take custody of I.S. Father did what he could to acquire parenting skills, to keep up with his son's development through telephone conversations with paternal aunt during father's incarceration, and through telephone calls and monitored visits with I.S. after his release from custody while residing in a drug treatment facility. But, to the extent the evidence may support the inference that father has been able to form a bond with I.S., it is not comparable to that of the paternal aunt who cared for I.S. since he was 20 months old, loves him and is waiting to adopt him. In light of the length of dependency and I.S.'s strong bond with paternal aunt, who he now considers his "mommy" and is the only parent he knows, the trial court did not abuse its discretion in determining that it was not in I.S.'s best interest to offer reunification services to father for some indefinite period of time while he continues to rehabilitate.

### 3. No Error in Finding the Beneficial Relationship Does Not Apply

Father argues the juvenile court should have applied an exception under section 366.26, subdivision (c)(1)(B)(i) to termination of parental rights because, while in his

9

residential drug treatment program, he has maintained regular visitation with I.S. and I.S. would benefit from continuing the relationship.

Father argues the juvenile court should have applied an exception under section 366.26, subdivision (c)(1)(B)(i) to termination of parental rights because, while in his residential drug treatment program, he has maintained regular visitation with I.S. and I.S. would benefit from continuing the relationship.  Father acknowledged the leading case interpreting the beneficial relationship exception is *In re Autumn H*. (1994) 27 Cal.App.4th 567, 575, which held that:  "[T]he 'benefit from continuing the [parent/child] relationship' exception [means] the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.  [¶]  Interaction between natural parent and child will always confer some incidental benefit to the child.  The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation.  [Citation.]  The relationship arises from day-to-day interaction, companionship and shared experiences.  [Citation.]  The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent."  To establish the exception, "[a] parent must show more than frequent and loving contact or pleasant visits."  (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.)  "The parent must show he or she *occupies a parental role in the child's life*, resulting in a significant, positive, emotional attachment between child and parent."  (*Ibid*., italics added.)

Because father failed to show there was a significant emotional attachment between him and I.S. or that he occupied a parental role in I.S.'s life, substantial evidence supports the juvenile court's order terminating father's parental rights.  (*In re S.B.* (2008) 164 Cal.App.4th 289, 298 [Court of Appeal reviews juvenile court's finding to determine

10

if supported by substantial evidence].) There was no evidence that I.S. and father enjoyed a bond such that severance would negatively impact I.S. There was no evidence that father had assumed a parental role or that he could assume a parental role within any predictable timeframe. (Cf. *ibid.* [evidence that father who was primary caregiver for three years supported exception to termination of parental rights].) Father is little more than a friendly visitor to I.S. as a consequence of father's continued pursuit of a criminal lifestyle after his son's birth.

### 4. No Violation of Fundamental Right to Parenting

Father also argues the denial of his section 388 petition and finding that the beneficial relationship does not apply violates "fundamental federal rights" and that the standard of *Chapman v. California* (1967) 386 U.S. 18 applies. Father's argument is flawed. First, the *Chapman* standard of review applies to criminal cases and has no bearing on dependency cases. Father has failed to identify to this court any legal authority that the section 388 petition process or the contested section 366.26 hearing procedure somehow violates any federal constitutional right. (Cf. *In re Marilyn H.*, *supra*, 5 Cal.4th at pp. 306-310 [finding the " 'escape mechanism' " afforded by the section 388 petition process and the procedural protections of the dependency scheme as a whole satisfy due process].) Indeed, there is nothing in the record indicating father was in any way denied a fair opportunity to present any and all evidence supporting his position.

Second, while the state may not interfere with parental rights without a compelling state interest, the state has an overriding interest in protecting the welfare of a child. "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, *the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect*. . . . This interest is a compelling one. . . . The state's interest requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement and well-being, rather than on a parent's challenge to a custody order." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 307, italics added, citations omitted.) Father has not shown the juvenile court's orders in any way violated his rights.

11

**DISPOSITION**

The juvenile court's orders denying father's section 388 petitions and terminating parental rights are affirmed.

GRIMES, J.

We concur:

RUBIN, Acting P. J.

FLIER, J.

12