65 Cal.Rptr.3d 320 (2007)
154 Cal.App.4th 986
In re J.T., et al., Persons Coming Under the Juvenile Court Law.
Contra Costa County Bureau of Children and Family Services, Plaintiff and Respondent,
v.
Sandra S., Defendant and Appellant.
No. A117049.
Court of Appeal of California, First District, Division Five.
August 29, 2007.
*321 Silvano B. Marchesi, County Counsel, Carol T. Nguyen, Deputy County Counsel, for Petitioner and Respondent.
Caroline J. Todd, under appointment by the Court of Appeal under the First District Appellate Project, Berkeley, for Defendant and Appellant.
GEMELLO, J.
Sandra S. appeals from the termination of her parental rights to her three children. The sole issue she raises is the agency's failure to comply with the notice requirements of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.). We reverse and remand with directions for further proceedings.

Background
Sandra S. (Mother) is the mother of J.T. (born 2002), Cassandra T. (born 2003) and Mary T. (born 2005). In October 2004, the Contra Costa County Bureau of Children and Family Services (CFS) filed juvenile dependency petitions for J.T. and Cassandra pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (j).[1] The children were detained and placed in foster care. The petitions, as amended, alleged that the parents failed to provide appropriate care to Cassandra, who had numerous medical and nutritional needs; the parents had a history of domestic violence; Mother had mental health problems; and the father had a substance abuse problem. The parents admitted one allegation in each petition and the juvenile court sustained the petitions pursuant to section 300, subdivision (b). The court issued dispositional orders removing the children from the home. Those orders were continued at the six-month status review hearing in September 2005.
The jurisdiction, disposition and six-month status review reports from CFS stated the ICWA did not apply. The father denied Indian ancestry. Mother, who was adopted, told CFS her biological parents had Sioux and Cherokee Indian ancestry, but she did not know her biological parents' names.
In June 2005, Mary was born and immediately detained. The juvenile court sustained allegations of failure to protect and the abuse and neglect of siblings in a petition brought pursuant to section 300, subdivisions (b) and (j). At the disposition hearing, the court removed Mary from the parents' home.
The jurisdiction report and an addendum in Mary's case stated that the ICWA did not apply, citing the same information provided in the reports for her older siblings. The social worker re-interviewed Mother about her Indian ancestry in October 2005 and for the first time Mother produced adoption documents, which stated that her biological mother was of German and Sioux Indian descent. The documents did not include the biological mother's name, date of birth, place of birth or other identifying information. CFS continued its attempts to gather additional information.
*322 Despite reunification services, the parents failed to reunify. In July 2006, the court held a combined status review hearing for all three children. The status review reports for the three children concluded that the ICWA did not apply. The court terminated reunification services and set a permanency planning hearing pursuant to section 366.26 for November 16, 2006.
The reports for the section 366.26 hearing again stated the ICWA did not apply. In response to a CFS inquiry, the Alameda County Post Adoption Unit reported that it had no record of an adoption involving a child with Mother's last name (S.) as either a birth or an adoptive name.
Nevertheless, at the November hearing deputy county counsel requested a continuance to allow CFS to comply with ICWA notice requirements. He reported, "We expended a lot of energy trying to unseal the adoption records from Alameda County so we could get the name of the bio [sic] maternal grandmother. We haven't been able to obtain that information. So we have no informationidentifying information, but we stillthere's still a notice requirement that we have to fulfill by mailing notice to the BIA [Bureau of Indian Affairs] at least of the Sioux heritage." The court continued the hearing to January 11, 2007.
On November 21, 2006, CFS called Mother's adoptive father and learned Mother's birth name and the name of Mother's biological mother. On December 13, 2006, CFS mailed ICWA notices that included this information to three Cherokee tribes, three Sioux tribes and the BIA CFS received signed return receipts from the six tribes and the BIA that indicated receipt between December 14 and 22, 2006.[2]
On December 15, 2006, at county counsel's request, CFS called Mother's adoptive father again to request more information. During this conversation, the father suggested that Mother's middle birth name, "Rose," might be a clue that she was a member of the Rosebud Sioux Tribe. CFS promptly sent an ICWA packet to the Rosebud Sioux Tribe, and the signed return receipt was returned four days later. The father provided additional information about the adoption, but it was not helpful to the post adoption unit in locating Mother's adoption records. County counsel obtained a court order to view all records, but discovered that Mother's adoption file was not available because all files were destroyed after a dependent child turned age 28 years old. Mother was 31 years old. Also in December, Mother's attorney informed CFS that she had asked Mother to sign a form to allow any available file in Alameda County to be opened.
At the January 2007 hearing, CFS summarized its actions since the November hearing and concluded, "At this juncture it appears that no additional information can be collected. The Bureau has sent proper ICWA notice...." CFS submitted documentation of ICWA notice. The court found that notice was given and the children are not eligible under the ICWA. Mother then moved for a continuance to *323 allow the Rosebud Sioux tribe more time to respond and to allow her to file a petition to open Mother's adoption records. Deputy county counsel objected because CFS had already been informed that the adoption records had been destroyed and argued that it had provided sufficient ICWA notice. Mother responded that it was unclear whether the superior court adoption file or only the CFS departmental records had been destroyed or whether the adoption had occurred in Alameda County. The court denied the continuance because notice was proper and "we need to move on for the children." The court terminated the parents' rights to all three children.

DISCUSSION
Mother argues that the order terminating parental rights must be reversed because CFS did not comply with ICWA notice requirements. First, CFS did not send notice to "all tribes of which the child may be a member or may be eligible for membership." (§ 224.2, subd. (a)(3); see also Cal. Rules of Court, rule 5.664(f)(2), (3), as amended Jan. 1, 2007.)[3] Second, CFS did not address notice to the tribal chairperson or a designated agent for service. (§ 224.2, subd. (a)(2); see also rule 5.664(f)(2), (3), as amended Jan. 1, 2007.)
Although Mother did not raise these objections below, a challenge to ICWA notice compliance is not forfeited due to a failure to object in the trial court. (In re Nikki R. (2003) 106 Cal.App.4th 844, 849, 131 Cal.Rptr.2d 256.) The trial court's finding that ICWA notice was adequate is reviewed for substantial evidence. (Winograd v. American Broadcasting Co. (1998) 68 Cal.App.4th 624, 632, 80 Cal. Rptr.2d 378; In re E.H. (2006) 141 Cal. App.4th 1330, 1333, 46 Cal.Rptr.3d 787.)
Section 224.2, subdivision (a) codifies ICWA notice requirements: "(a) If the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved, any notice sent in an Indian child custody proceeding under this code shall ... comply with all of the following requirements: ... [¶][¶] (2) Notice to the tribe shall be to the tribal chairperson, unless the tribe has designated another agent for service. [¶] (3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe in accordance with subdivision (d) of Section 224.1, after which notice need only be sent to the tribe determined to be the Indian child's tribe (§ 224.2, subd. (a)(2), (3).) Section 224.2 went into effect after the ICWA notices were sent in this case, but before the juvenile court ruled that notice was proper. (Stats.2006, ch. 838, § 31, effective January 1, 2007.) The juvenile court was required to apply the law in effect at the time it rendered a decision on January 11, 2007 on the adequacy of ICWA notice. (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 931, 154 Cal.Rptr. 503, 593 P.2d 200.) As a rule of procedure, the new statute did not have an impermissible retroactive effect. (7 Witkin, Summ. of Cal. Law (10th ed. 2005) Constitutional Law, § 623, pp. 1017-1018; § 630, p. 1028.)

I. Notice to All Tribes

State law mandates notice to "all tribes of which the child may be a member or eligible for membership." (§ 224.2, subd. *324 (a)(3).) An "Indian tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians...." (25 U.S.C. § 1903(8); § 224.1, subd. (a); rule 5.664(a)(6).) The Department of the Interior publishes a list of "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs" in the Federal Register, and the California Department of Social Services, Children and Family Services Division, publishes a list of tribes entitled to ICWA notice on its website. Mother identified her possible Indian heritage as Sioux and Cherokee. Both the California and the federal lists identify three Cherokee tribes and 16 Sioux tribes. (70 Fed.Reg. 71194; www.childsworld.ca. gov/Res/pdf/alphatribe.pdf.) CFS does not dispute that it failed to send ICWA notice to all of the Sioux tribes on these lists.
CFS argues that it nevertheless complied with ICWA notice requirements because it sent notice to the BIA. It argues notice to the BIA was all that was required because the identity of Mother's tribe was unknown. The ICWA provides, "If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe." (25 U.S.C. § 1912(a).) State law provides, "Notice, to the extent required by federal law, shall be sent to the Secretary of the Interior's designated agent, the Sacramento Area Director, Bureau of Indian Affairs." (§ 224.2, subd. (a)(4).) The parties dispute whether "the identity or location of ... the tribe cannot be determined" such that notice to the BIA was sufficient (25 U.S.C. § 1912(a).) CFS's implicit argument is that notice to the BIA sufficed because it did not know the specific Cherokee or Sioux tribe or location where the minors might be members or eligible for membership.
CFS cites In re Edward H. for the holding that "proper notice to some but not all possible tribes in which a dependent child may be eligible for membership does not violate the ICWA provided the agency also gives notice ... to the [BIA]." (In re Edward H. (2002) 100 Cal.App.4th 1, 4, 122 Cal.Rptr.2d 242; see also In re CD. (2003) 110 Cal.App.4th 214, 226-227, 1 Cal. Rptr.3d 578.) In re Edward H. relied in part on the fact that the requirement of former rule 1439 that notice be sent to "all tribes of which the child may be a member or eligible for membership" exceeded the requirements of the ICWA. The implication is that the rule was not binding to the extent it exceeded the requirements of the federal law. (In re Edward H., at pp. 4-5, 122 Cal.Rptr.2d 242.) The 2006 enactment of section 224.2, however, has incorporated the rule 1439 notice requirements into a statute and expressly provides that heightened state law standards shall prevail over more lenient ICWA requirements. (§§ 224, subd. (d); 224.2, subd.(a)(3).) In light of this superseding legislation, we decline to follow the holding of In re Edward H.
Our conclusion that notice must be sent to all Sioux tribes is bolstered by evidence of the legislative intent of the recent enactment. The Assembly Committee reported that the goal of the legislation was to increase compliance with the ICWA in order to foster Indian children's connection with their Indian tribal heritage. (Assem. Com. on the Judiciary, Analysis of Sen. Bill No. 678 (2005-2006 Reg. Sess., June *325 20, 2006, p. 1.))[4] "Of significant concern is the inability of tribes to participate in child custody proceedings because they fail to be properly notified of the proceedings." (Id. at p. 6.) Under Senate Bill No. 678, ICWA notice requirements set forth in existing BIA Guidelines are codified in state law. (Id. at p. 12.) In addition to requiring notice to "all tribes," the legislation imposed an "affirmative and continuing duty to inquire" about minors' possible Indian heritage; required notice if the court knows or has reason to know the child is or may be an Indian child; and mandated that varied biographical data be included on the notice forms. (§§ 224.2, subd. (a); 224.3, subd. (a); see also rule 5.664(d), (f).) In the context of the broader statutory scheme and in light of legislative history, the phrase "all tribes" of which Mother's children may be members or eligible for membership is best understood as referring to all federally recognized Sioux and Cherokee tribes. Even before the 2006 enactment, when the "all tribes" language was set forth in former rule 1439, several appellate decisions construed the law to require notice to all (for example) Cherokee tribes when possible Cherokee membership or other tribal affiliation had been identified.[5] (See Nicole K. v. Superior Court (2007) 146 Cal.App.4th 779, 782, 784, 53 Cal.Rptr.3d 251; In re Gerardo A. (2004) 119 Cal.App.4th 988, 995-996, 14 Cal.Rptr.3d 798; In re Miguel E. (2004) 120 Cal.App.4th 521, 550, 15 Cal. Rptr.3d 530; In re L.B. (2003) 110 Cal. App.4th 1420, 1424, 3 Cal.Rptr.3d 16.)
Under section 224.2, subdivision (a)(3), CFS was required to send ICWA notice to all of the federally recognized Cherokee and Sioux tribes, even though it also provided proper notice to the BIA.

II. Notice to Tribal Chairperson or Designated Agent for Service

"Notice to the tribe shall be to the tribal chairperson, unless the tribe has designated another agent for service." (§ 224.2, subd.(a)(2); see 71 Fed.Reg. 43788 ("Indian Child Welfare Act; Receipt of Designated Tribal Agents for Service of Notice").) CFS does not dispute that, with one exception, its notices were addressed to tribes without any specific addressee. CFS argues the error was harmless for three reasons. First, notice to the BIA was all that was required. We have rejected this argument. Second, two of the tribes responded to the notice with a determination that the minors were not members or eligible for membership in the tribes. We agree that these responses rendered the error harmless as to those two tribes. (In re Gerardo A, supra, 119 Cal.App.4th at p. 996, 14 Cal.Rptr.3d 798.) Third, the signed return receipts from the other tribes demonstrate that any defect in notice was harmless as to those tribes. But the return receipts do not demonstrate that the ICWA notice was received by the tribal chairperson or an alternative designated agent for service. The purpose of the requirement that notice be sent to the designated persons is to ensure that notice is received by someone trained and authorized to make the necessary ICWA determinations, including whether the minors are members or eligible for membership and whether the tribe will elect to participate in the proceedings. Receipt by an unidentified person at the tribe's address does not fulfill this purpose.
*326 ICWA notice requirements were not satisfied. Accordingly, we remand for the limited purpose of ensuring compliance with the ICWA. (In re Francisco W. (2006) 139 Cal.App.4th 695, 43 Cal.Rptr.3d 171.)

Disposition
The judgment terminating parental rights is reversed and the case is remanded to the juvenile court with directions to order CFS to comply with the notice provisions of the ICWA. If, after proper notice, the court finds that the children are Indian children, the juvenile court shall proceed in conformity with all provisions of the ICWA. If, on the other hand, the court finds that the children are not Indian children, the judgment terminating parental rights shall be reinstated.
We concur. SIMONS, Acting P.J., and NEEDHAM, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] In a December 21, 2006 letter, the United Keetoowah Band of Cherokee Indians in Oklahoma stated that the children were not members or eligible for enrollment. In a January 4, 2007 letter, the Crow Creek Sioux Tribe informed CFS that the children were not enrolled and the letter implied that they were not eligible for enrollment (a box indicating they were not enrolled but were eligible for enrollment was left unchecked). At the January 11, 2007 section 366.26 hearing, deputy county counsel stated that CFS had also just received a letter from the Eastern Band of Cherokee stating the children were not eligible for membership. This letter is not in the record.
[3] All rule references are to the California Rules of Court.

Effective Feb. 23, 2007, rule 5.664 was amended to eliminate detailed notice requirements and to refer to section 224.2, effective January 1, 2007.
[4] We grant Mother's request for judicial notice of the Senate Bill No. 678 analysis. (Evid.Code, § 452.)
[5] The California list of tribal government contacts for ICWA purposes groups the tribes by "tribal affiliation" such as Cherokee and Sioux. (www.childsworld.ca.gov/Res/pdf/ alphatribe.pdf.)