Filed 9/29/14  In re M.M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>M.S.,<br><br>　　　　Defendant and Appellant. | B254074<br><br>(Los Angeles County<br>Super. Ct. No. CK75388) |

　　　　APPEAL from orders of the Superior Court of Los Angeles County, Valerie Skeba, Referee.  Affirmed.

　　　　Lori N. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel for Plaintiff and Respondent.

_____

M.S. (mother) appeals from the juvenile court's orders of January 15, 2014, terminating parental rights to M.M. and R.M. pursuant to Welfare and Institutions Code section 366.26.[1] She contends the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) was not complied with.[2] We affirm.

## STATEMENT OF FACTS AND PROCEDURE

M.M., who was born in 2003, and R.M., who was born in 2004, ("children") to mother and the presumed father, R.M. ("father"), were detained from parental custody on November 18, 2008, and a section 300 petition was filed by the Department of Children and Family Services ("Department").[3] On February 5, 2009, children were declared dependents of the court based on sustained allegations of drug abuse and domestic violence by parents.[4] On October 7, 2009, the court sustained a subsequent petition based on additional findings of neglect and failure to protect. On November 4, 2009, no reunification services were ordered. After five placements, the children were placed in the care of foster parents who wanted to adopt them. On January 15, 2014, parental rights were terminated. Mother did not contest the recommendation to terminate parental rights.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] After filing respondent's brief, the Department informed us of a recent decision, *In re Isaiah W.* (2014) 228 Cal.App.4th 981, 985-988, which held that a challenge to an ICWA finding is waived if it is not timely appealed. No issue of waiver was raised in the appeal. As the decision is not relevant to an issue already raised in the appeal, the Department's provision of the decision is not authorized and we do not address it. (See Cal. Rules of Court, rule 8.254.)

[3] The section 300 petition also alleged jurisdiction over the children's half-sibling, T.K. ("T."), born to mother and W.T.

[4] T. was made a dependent of the court at a subsequent hearing.

DISCUSSION

*The ICWA was complied with.*

Mother contends mother's and father's alleged Indian heritage was not sufficiently investigated, notice to the tribe was inadequate, notice was not received by the designated tribal agents, and the juvenile court failed to make an ICWA finding. We disagree with the contentions.

1. *Standard of review.*

We review the juvenile court's determination "whether proper notice was given under ICWA and whether ICWA applies to the proceedings" for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.) In determining whether substantial evidence supports the factual findings, "all intendments are in favor of the judgment and [we] must accept as true the evidence which tends to establish the correctness of the findings as made, taking into account as well all inferences which might reasonably have been drawn by the trial court." (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403-404.)

2. *Relevant facts and procedure.*

On November 21, 2008, mother and father each claimed possible Cherokee heritage. On the Judicial Counsel's mandatory Parental Notification of Indian Status form, they checked the boxes that would indicate they claimed they, or the children, were or may be a member of, or eligible for, membership in a tribe. Mother told the court that she, the children, maternal grandparents, and maternal great-grandparents were not enrolled in a tribe. Mother stated that maternal grandmother told her maternal great grandmother had Cherokee ancestry. Father stated no one in his family received tribal benefits, and paternal grandmother had Cherokee heritage although she was not a member of the tribe. The court ordered the Department to make efforts to investigate the claims, stating notice need not be given to the tribes at that time.

On December 10, 2008, "mother stated [to the social worker] that she confirmed with her mother (maternal grandmother) that there is no American Indian heritage in her family." Father stated he had Cherokee heritage through paternal grandmother's side of the family. A paternal aunt told the social worker paternal grandmother could not be

3

interviewed because she had had a stroke. Paternal aunt provided "as much information regarding American Indian heritage as was available." Paternal aunt stated paternal grandmother knew only that there was Indian heritage through paternal great-great-grandmother, but did not know which tribe.

Notice of the proceedings was sent to the three Cherokee tribes[5] on December 11, 2008. The notice contained: M.M.'s name, birthdate, and birthplace; R.M.'s name, birthdate, and birthplace; father's name, address, birthdate, and birthplace; paternal grandmother's married and maiden names, current address, city of former residence, birthdate, and birthplace; name of paternal grandfather and city of residence; name of paternal great-grandmother, the fact she was deceased, city of former residence, birthdate, and birthplace; and statement by paternal grandmother that paternal great-great-grandmother was born "on a tribe" but moved to Little Rock. The notice also reflected that father stated there was Cherokee heritage on paternal grandmother's side and paternal grandmother stated there was heritage in an unknown tribe through the paternal great-great-grandmother. The notice stated father and paternal grandmother were not registered with a tribe.[6]

The certified mail receipt for each notice was signed by an individual who was not the addressee, at the address the notice was addressed to. The Cherokee Nation responded on December 18, 2008 that the children were not Indian children.

Without objection to or challenge by mother, her statement that she confirmed there was no Indian heritage in her family was reported to the court at the jurisdiction hearing on January 5, 2009.

On February 5, 2009, when the children were declared dependents, the court stated that it could not make ICWA findings yet, because not enough time had elapsed after the notices were received by the tribes. The court put the ICWA finding in the children's

---

[5] The three tribes are United Keetoowah Band of Cherokee Indians, Eastern Band of Cherokee Indians, and Cherokee Nation of Oklahoma.

[6] The notice also contained information concerning mother and mother's family.

case over to March 5, the date scheduled for a jurisdiction/disposition hearing in T.'s case.

On March 5, 2009, the court received the returned receipts for the ICWA notices and the response from the Cherokee Nation. The court admitted into evidence mother's statement that there was no Indian heritage and the report of the Department's investigations concerning each parent's ancestry. The court found ICWA did not apply to children.[7]

3. *The ICWA.*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) The substantive provisions of the ICWA apply to the minor's placement in adoption and foster care and to other hearings, such as termination of parental rights, which affect the minor's status." (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266.)

The court and the Department have an affirmative duty to inquire whether a child in a dependency proceeding is an Indian child. (§ 224.3, subd. (a).) When the juvenile court knows or has reason to know that an Indian child is involved, notice of the dependency proceeding must be given to the tribe. (25 U.S.C. § 1912(a).) Circumstances that may provide reason to know the child is an Indian child include: "(1) A person having an interest in the child, including . . . a member of the child's extended family[8] provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents,

---

[7]  The court stated: "I will now find that this is not an ICWA case. Now, the mother stated that there was no Native American Indian heritage. [The claim of Indian heritage] was as to the . . . father [of the children]."

[8]  The term "extended family" is "as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).)

5

grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).)

An Indian child is defined in the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, . . . shall be conclusive." (§ 224.3, subd. (e)(1).)

4. *ICWA finding*.

Mother contends the court failed to make an ICWA finding. We disagree. On February 5, 2009, the court put the ICWA finding in the children's case over to March 5. The court made an express finding on March 5 the ICWA did not apply to the children. Mother did not object to the express finding. Subsequent court reports recited that on March 5 the court found this is not an ICWA case, with no objection by mother. We conclude the court did not fail to make an ICWA finding applicable to the children.

5. *Investigation of mother's alleged Cherokee heritage.*

Mother contends that, as her statements concerning the children's Indian heritage were in conflict, the juvenile court had a duty to inquire further. Mother mischaracterizes the record. Her statements did not conflict with one another.

Initially, mother stated maternal grandmother taught her the family had Indian heritage. When the Department subsequently followed up, mother stated she had spoken to maternal grandmother and maternal grandmother confirmed the family had no Indian heritage. The two statements are entirely consistent. Mother believed maternal grandmother claimed Indian heritage in the family, until mother checked with maternal grandmother and learned the family had no Indian heritage. No issue existed which required further investigation. (Compare *In re Damian C.* (2009) 178 Cal.App.4th 192, 199 [a family member's statements he had heard conflicting stories concerning whether the family had Indian heritage triggered a duty to further investigate and provide notice to the tribes].)

6

6. *Investigation of father's alleged Indian heritage.*

Mother contends the investigation of father's alleged Indian heritage was insufficient. We disagree with the contention.

The Department's investigation of father's claim of Indian heritage through paternal grandmother included the following. The social worker interviewed father. An interview with paternal grandmother was precluded by paternal grandmother's medical condition. However, a paternal aunt stated she had all the information that was available concerning the claim. The worker then interviewed the aunt, who provided all the information the family had, including the information that, according to paternal grandmother, the only Indian heritage that existed was through paternal great-great-grandmother in a tribe paternal grandmother could not identify. A sufficient investigation did not require the worker to interview paternal grandfather, because there was no claim of Indian heritage on his side, or the other paternal aunt, because there was no additional information she could provide concerning father's maternal side. We conclude the investigation of father's alleged Indian heritage was sufficient.

7. *Adequacy of notice to tribes of alleged Cherokee heritage through father*.

Mother contends the notice sent to the tribes was inadequate because it was incomplete. We disagree with the contention.

"[A]ny failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)" (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162; accord, *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 783-784 [the adequacy of ICWA notice is reviewed for harmless error].)

"The object of tribal notice is to enable a review of tribal records to ascertain a child's status under ICWA. . . . The notices 'must contain enough information to be meaningful. [Citation.] The notice must include: if known, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or

7

may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information;[9] and (4) a copy of the dependency petition.' [Citation.] 'It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.]' " (*In re K.M.* (2009) 172 Cal.App.4th 115, 119.)

Mother contends the notice should have included the children's birth certificates, father's middle name, and father's former address. While some or all of these items may have been available, their omission did not render the notice lacking in enough available information to enable the tribe to review its records to ascertain the children's status under the ICWA. The notice contained the information that would be supplied on a birth certificate: each child's name, birthdate, birthplace, and names of parents. The notice contained information identifying father: his name, address, birthdate, and birthplace; names and information identifying his parents; his mother's current address and city of former residence; and name of paternal grandmother.

Mother contends the notice could have contained additional information identifying mother. As no Indian heritage was claimed through mother's side, the omission of additional information concerning mother did not result in the notice lacking enough information to be meaningful.

Concerning mother's contention the notice should have contained information identifying paternal great-great-grandparents and paternal grandfather's street address, we disagree with the contention. Notice is not required to contain information about great-great-grandparents. (See §§ 224.2, subd. (a)(5)(C), 224.3, subd. (b)(1).) Moreover, any lack of information about paternal great-great-grandfather did not render the notice insufficient to enable the tribe to ascertain the children's ICWA status, because Indian

---

[9]    Under section 224.2, subdivision (a)(5)(C), "other identifying information" includes: "All names known of the Indian child's biological parents, grandparents, and great-grandparents, . . . married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, . . . if known." Under section 224.2, subdivision (a)(5)(E), notice shall also include the child's birth certificate, if available.

8

heritage was not claimed through him. As to paternal grandfather and paternal great-great-grandmother, it is reasonable to infer, from paternal aunt's statement she supplied the worker with all available information, that the notice included all available information, and no further identifying information was available.

We conclude any omission of available, required information specified by mother was harmless error, and the other omissions specified by mother concerned information that was not available. Notice to the tribes of alleged Indian heritage through father was sufficient.

8. *Service of notice to the tribes.*

Mother contends the court failed to insure that notice was received by agents designated to receive service, as the delivery receipts were signed by individuals who were not the addressees. We disagree with the premise of the contention. All that is required is that notice be addressed to the tribal chairperson or designated agent; receipt of the notice by the tribal chairperson or designated agent is not required. (§ 224.2, subd. (a)(2) ["[n]otice to the tribe shall be to the tribal chairperson, unless the tribe has designated another agent for service"].) Mother does not contend the notices were not addressed to the correct person. The fact the delivery receipts were signed by individuals who were not the addressees does not render the notice insufficient.[10] (Compare *In re J.T., supra,* 154 Cal.App.4th at p. 994 [failure to address the notice to any specific individual was error, and, where the tribe did not respond to the notice, the error was not harmless].)

---

[10] In any event, as to the Cherokee Nation of Oklahoma, the tribe responded, rendering any alleged error harmless. (*In re J.T.* (2007) 154 Cal.App.4th 986, 994.)

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                              KLEIN, P. J.

We concur:



                    KITCHING, J.



                    EDMON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.