Filed 6/27/16  In re A.L. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.L., <br><br> a Person Coming Under the Juvenile Court Law. | B266348 <br> (Los Angeles County <br> Super. Ct. No. DK07908) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> RACHEL S. and ROBERT L., <br><br>     Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed and Remanded.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant Rachel S.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant Robert L.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother Rachel S. and Father Robert L. appeal from the juvenile court's order terminating their parental rights to their son, A.L. ("A."), under Welfare and Institutions Code section 366.26.[1] The sole issue is whether the court complied with its duty of inquiry and notice under the Indian Child Welfare Act ("ICWA"). We conclude that it did not. We affirm the order terminating parental rights, but remand for ICWA compliance.

## BACKGROUND

### *Jurisdiction/Disposition*

The jurisdictional and dispositional evidence is not relevant to this appeal. We note only that Mother had a history of drug abuse, and had abused A.'s older brother. Father was a registered sex offender with convictions of, among other crimes, lewd acts on a child. After six-week-old A. suffered second degree burns to his thigh, the Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition, which the court adjudicated on December 2, 2014. The court sustained allegations under section 300, subdivisions (b) [failure to protect], (d) [substantial risk of sexual abuse], and (j) [abuse of a sibling]. On August 11, 2015, the court terminated mother and father's parental rights.

### *ICWA Evidence*

As to the ICWA issue raised on appeal, the record is as follows.

---

[1] All further section references are to the Welfare and Institutions Code.

In the Detention Report filed on October 16, 2014, DCFS reported that the caseworker had interviewed mother and father "regarding Indian [a]ncestry," and that both stated that they did "not have any Indian ancestry in [their] blood." However, a week later, on October 23, 2014, father filed a Parental Notification of Indian Status (Judicial Council Form ICWA-020), in which he checked the box stating he may have Indian ancestry. He listed three relatives: (1) "PGF [paternal grandfather] now deceased," (2) "PGGM [paternal great grandmother] deceased," and (3) "PGM [paternal grandmother]." He identified the paternal grandmother as "Kay Lee Klylinksikie," and provided a telephone number. He also listed the name of "Raymond Andrew Lee ('Reed')", but did not state his relationship. The tribe he identified was "Cherokee." The minute order of October 23, 2014 stated that father claimed "American Indian Heritage: Cherokee."

In the Jurisdiction/Disposition Report filed December 2, 2014, DCFS stated that "[t]he parents report that they have no Native American ancestry." But in a Last Minute Information report filed the same date, DCFS reported: "This DI [dependency investigator] interviewed the father in person on 11/14/14[.] [H]e was asked about any possible Native American ancestry. This DI attempted to contact the child's paternal grandmother, Kay Cieszniski regarding the possible Native American Ancestry at [the phone number listed in father's ICWA-020 form, but] there was no answer[.] [T]his DI left a message and at the time of writing this report she has not responded."

Upon sustaining the section 300 petition on December 2, 2014, the court ordered DCFS to give notice to all Cherokee tribes. On December 12, 2014, DCFS sent notice (Judicial Council form ICWA-030) to the three tribes.

The notice listed "Father's Biological Mother (Child's Paternal Grandmother)" as "Kay Cieszniski," with no further information. It listed

3

"Father's Biological Father (Child's Paternal Grandfather)" as "Robert Lee Sr.," with a birth date in May 1919 in Texas, and a date of death in January 1973, also in Texas. This name was not listed in father's ICWA-020 form. Further, the name "Raymond Andrew Lee ('Reed')", which was listed in father's ICWA-020 form, was not listed in the notice.

On January 15, 2015, DCFS provided the court with copies of the ICWA notices. On February 18, 2015, the court received notices from the Cherokee Tribes indicating that A. was not an Indian child. On that date, the parents were present and represented by counsel. The court found the ICWA notices were proper and complete, and found ICWA inapplicable. The parents made no objection to the adequacy of the notice.

## DISCUSSION

The parents contend that DCFS failed to investigate and clarify ambiguous information concerning father's possible Indian ancestry and to ensure proper notice was given to the Cherokee Tribes. We agree.

"When a court 'knows or has reason to know that an Indian child is involved' in a juvenile dependency proceeding, a duty arises under ICWA to give the Indian child's tribe notice of the pending proceedings and its right to intervene." (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538, quoting 25 U.S.C. § 1912(a).) Once there is "reason to know that an Indian child is involved," the required notices "shall be sent . . . unless it is determined that [ICWA] does not apply." (§ 224.2, subd. (b).) As explained in *In re H.B.* (2008) 161 Cal.App.4th 115, "ICWA itself does not expressly impose any duty to inquire as to American Indian ancestry; nor do the controlling federal regulations." (*Id*. at p. 120.) "But ICWA provides that states may provide 'a higher standard of protection to the

4

rights of the parent . . . of an Indian child than the rights provided under [ICWA].'" (*Ibid.*, quoting 25 U.S.C. § 1921.)  The governing California statute specifically provides that the juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed is or may be an Indian child in all dependency proceedings."  (§ 224.3, subd. (a).)  This duty includes a requirement that the caseworker "make further inquiry regarding the possible Indian status of the child . . . as soon as practicable" after the issue arises, "by interviewing the parents, Indian custodian, and extended family members . . . and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."  (§ 224.3, subd. (c).)  The continuing duty of inquiry also includes the duty to clarify ambiguous or contradictory information regarding Indian Ancestry so as to determine whether ICWA applies and whether, if so, notice is properly given.  (See *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198 ["In order for the court to make a determination whether the notice requirements of the ICWA have been satisfied, it must have sufficient facts, as established by the Agency, about the claims of the parents, the extent of the inquiry, the results of the inquiry, the notice provided any tribes and the responses of the tribes to the notices given.  Without these facts, the juvenile court is unable to find, explicitly or implicitly, whether the ICWA applies"].)

Finally, we review the juvenile court's finding that ICWA notice was accurate under the substantial evidence standard.  (*In re J.T.* (2007) 154 Cal.App.4th 986, 991.)  Under that standard, we view the entire record in the light most favorable to the juvenile court's finding, and draw all reasonable inferences in support.  (See *In re Marina S.* (2005) 132 Cal.App.4th 158, 165.)

5

Here, the salient parts of the record show the following. Among the three relatives listed in his ICWA-020 filed on October 23, 2014, father listed "PGM [paternal grandmother]," identified her as "Kay Lee Klylinksikie," and provided a telephone number. The form is unclear whether father meant Kay was A.'s paternal grandmother (father's biological mother) or father's paternal grandmother.

In the December 2, 2014 Last Minute Information report, the dependency investigator stated that he interviewed the father in person on November 14, 2014, about his possible Native American ancestry. However, the report gave no details regarding what information the investigator learned.

The investigator wrote that he attempted to contact "the child's paternal grandmother," identified in the report as "Kay Cieszniski," and listed the phone number used. A comparison shows it was the same phone number listed in father's ICWA-020 form for the person identified as "PGM . . . Kay Lee Klylinksikie." According to the investigator, there was no answer and he left a message. As of the date of the report, he had received no return call. The notice sent to the tribes on December 12, 2014, listed "Father's Biological Mother (Child's Paternal Grandmother)" as "Kay Cieszniski," with no further information.

Applying the substantial evidence standard to this showing (although the report fails to provide any detail), we may infer that in the interview with father, the investigator clarified the correct spelling of Kay's last name (Cieszniski rather than Klylinksikie) and her relationship to A. (his paternal grandmother rather than father's paternal grandmother). But even if that clarification was achieved, making a single phone call and leaving a message for the paternal grandmother, without any further follow-up and no explanation for why no further inquiry was made, is not sufficient to meet the continuing duty of inquiry. (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1167-1168 [given conflict in the evidence, "the social worker

6

had a duty of further inquiry . . . [b]ut there is nothing in the record to indicate the social worker interviewed anyone besides father, such as the paternal grandmother"].)

Besides this inadequacy, there were other ambiguities as to father's possible Indian ancestry that DCFS did not explain. Father's ICWA-020 listed "PGF [paternal grandfather] now deceased," and "PGGM [paternal great grandmother] deceased." He also listed the name of "Raymond Andrew Lee ('Reed')", but did not state that person's relationship to father or to A. In the notice sent to the tribes, the name "Raymond Andrew Lee ('Reed')" is not listed. Instead, "Father's Biological Father (Child's Paternal Grandfather)" is listed as "Robert Lee Sr.", a name that does not appear in father's ICWA-020 form, with a birth date in May 1919 in Texas, and a date of death in January 1973, also in Texas.

Again, although the Last Minute Information report is deficient, we may infer that in his interview with father, the investigator learned that father's biological father was "Robert Lee Sr.," and also learned the location and dates of his birth and death. But father's ICWA-020 form did not state the relationship of "Raymond Andrew Lee ('Reed')" to father or A., and there is no explanation for whether "Robert Lee Sr." is the same person father was referring to when he listed "Raymond Andrew Lee ('Reed')" in his ICWA-020 form.

Moreover, father's ICWA-020 listed "PGGM [paternal great grandmother] deceased" as a possible Indian relative. However, no such relative is listed in the ICWA notice, and there is no explanation for what investigation, if any, was done to learn the identity of that person and whether she was an Indian ancestor.

In light of these deficiencies, we conclude that DCFS failed to comply with its continuing duty of inquiry: it failed to show that it did anything more than attempt to call father's apparent biological mother Kay Cieszniski on one occasion,

7

it failed to adequately explain why "Raymond Andrew Lee ('Reed')" was listed as a possible Indian ancestor on father's ICWA-020 form, but was not listed in any capacity in the notice sent to the Cherokee Tribes, and it failed to explain what inquiry, if any, it made to determine the identity of the unnamed paternal great grandmother mentioned in father's ICWA-020 and to determine whether she was a possible Indian ancestor. (See *In re L.S., supra,* 230 Cal.App.4th at p. 1198 ["Given the conflicting and inadequate information on mother's claim of Indian heritage, the court had a duty either to require the Agency to provide a report with complete and accurate information regarding the results of its inquiry and notice or to have the individual responsible for notice to testify in court regarding the inquiry made, the results of the inquiry, and the results of the notices sent. Only then could the court determine whether the ICWA applied"].)

On appeal, DCFS argues that the parents have failed to show that these gaps in the record are prejudicial, and that the parents are "concealing the very information they complain DCFS and the juvenile court failed to elicit from them." DCFS has it backwards. Father provided sufficient information to require inquiry under the ICWA, and there is no basis in the record for accusing him or mother of "withholding secret knowledge." It is true that a failure to make the initial inquiry about Indian ancestry in the juvenile court is not prejudicial on appeal absent a showing that the parent would have been able to respond in a manner sufficient to invoke the ICWA. (See *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1428-1430.) But that is not the problem here. On this record, the deficiency is not that father has somehow concealed relevant information from DCFS; it is that the record fails to document that DCFS adequately investigated father's information, resolved the ambiguities and inconsistencies to the extent feasible, and provided complete notice to the Cherokee Tribes. Such failures by DCFS are not

8

immunized from oversight by accusing the parents (with no support in the record) of concealing ICWA information, nor by apparently seeking to pass onto them the duty of inquiry that section 224.3, subdivision (c) places squarely on DCFS.

The only remaining issue is the remedy. "'[A] notice violation under ICWA is not jurisdictional in the fundamental sense.'" (*In re Christian P*. (2012) 208 Cal.App.4th 437, 452.) Nevertheless, there has been some disagreement among our sister courts regarding whether the appropriate remedy includes reversal or merely a limited remand. (See, e.g., *ibid.* [limited remand]; *In re Veronica G.* (2007) 157 Cal.App.4th 179, 188 [same]; *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 267 [same]; but see *In re S.E.* (2013) 217 Cal.App.4th 610, 616 [reversal and remand]; *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 785 ["[e]ven assuming ICWA errors are not jurisdictional, we conclude the failure to give ICWA notice means that the orders in this case cannot stand"].) This court generally follows the rule that where, as here, there is a failure to comply with ICWA procedures before disposition, all jurisdictional and dispositional orders remain in effect while there is a limited remand to the juvenile court for DCFS to give ICWA notice. (See *In re Damian C*. (2009) 178 Cal.App.4th 192, 199-200; *In re Veronica G., supra*, 157 Cal.App.4th at pp. 187-188; *In re Brooke C*. (2005) 127 Cal.App.4th 377, 385.) Accordingly, we remand for ICWA compliance.

## DISPOSITION

We affirm the order terminating parental rights. The matter is remanded to the juvenile court with directions to: (1) order DCFS to provide a more detailed showing of its investigation, (2) determine on that showing whether the inquiry and notice were sufficient to comply with ICWA, and (3) to order any additional inquiry and notice that may be required. After proper notice, if it is determined that A. is an Indian child and ICWA applies to these proceedings, a

9

party or tribe may petition the juvenile court to invalidate the order terminating parental rights.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.

COLLINS, J.

10