Filed 7/21/21  In re I.E. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re I.E. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B310507 (Super. Ct. Nos. 20JV00051, 20JV00053, 20JV00054) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, Plaintiff and Respondent, v. C.P., Defendant and Appellant. | |

C.P. (Mother) appeals from the juvenile court order terminating her parental rights as to I.E. and S.P.  She contends the court erred in concluding that the Indian Child Welfare Act (ICWA) did not apply.  (25 U.S.C. § 1901 et seq.; Welf. & Inst.

Code, § 224 et seq.)[1]  We affirm.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

Mother had two children, I.E. and S.P., with their biological father, C.E. (Father).  The dependency petition alleged that I.E. and S.P. received inadequate medical care, I.E. was behind academically, and they were at substantial risk of abuse or neglect because parental rights had been terminated for abuse and neglect of two half-siblings.  It alleged that Mother had a chronic substance abuse problem, gave birth to two previous drug-positive children, and had a substantial criminal history.  It further alleged that Father was in state prison and left the children without provision for support.  (§ 300, subds. (b)(1), (g), (j).)

Mother stated in court, and on a form provided by the Santa Barbara County Department of Social Services (the department), that she had no Native American ancestry.

The department was unable to contact Father in prison.  It sent him an ICWA questionnaire by certified mail but he did not respond.  In court, Father said he was not enrolled in a tribe but had Navajo and Mescalero ancestors.  He said his

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

[2] The current appeal is from the order of February 11, 2021, which involved only I.E. and S.P.  The notice of appeal also purports to appeal regarding a third child, A.P.  Mother's parental rights as to A.P. were terminated on October 8, 2020.  We dismissed Mother's appeal of that order after she filed a brief that raised no issues.  (*In re A.P.* (May 24, 2021, B308511) [nonpub. opn.].)  Accordingly, we dismiss the current appeal regarding A.P.

mother knew more about their ancestry. He believed her great-grandmother was Indian, perhaps Navajo. He had not heard that his father had any Indian ancestry.

The paternal grandmother told the department she believed both sides of Father's family had Native American heritage, but she could not "prove it" because she and Father were not enrolled members. She said that Father's great-grandmother, whom she named, said she was a Navajo Indian from New Mexico, but her nephew said they were Mescalero.

The department obtained additional ancestry information from databases and provided the court with information for Father and 13 of his ancestors. Tribal affiliations of Navajo or Mescalero were listed for Father, his mother, and his grandfather, all based on tribal affiliation of his great-grandmother.

In August 2020, the department sent Notices of Child Custody Proceeding for Indian Child (Judicial Council Forms, form ICWA-030) by certified return receipt mail to the parents, the Bureau of Indian Affairs (BIA) and 11 tribal organizations: the Mescalero Apache Tribe, seven other Apache tribes, the Navajo Nation, the Ramah Navajo School Board, Inc., and the Colorado River Indian Tribes (Navajo). Because the department did not receive return receipts, it remailed the ICWA-030 forms in September.

The Mescalero Apache Tribe responded by letter that neither Father nor the children were members or met the requirements for enrollment. It stated that enrollment is needed for membership, and requires proof of one-quarter or more Mescalero Apache blood. Five other Apache tribes responded

that the children were not enrolled or eligible for enrollment. The other two Apache tribes received the notice but sent no substantive response.

The Ramah Navajo School Board, Inc. stated that it did not have access to the entire Navajo census records and deferred to the Navajo Nation, where those records were located. A letter from the Navajo Nation dated October 19, 2020, stated it was in the process of verifying the children's enrollment or eligibility for enrollment and needed time to complete it. The Colorado River Indian Tribes sent a return receipt but no substantive response.

On January 12, 2021, without objection, the court found the ICWA did not apply. The court subsequently found the children were likely to be adopted and terminated Mother and Father's parental rights. (§ 366.26.)

## DISCUSSION

The ICWA serves "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (25 U.S.C. § 1902; Welf. & Inst. Code, § 224.) When the facts are undisputed, we independently review compliance with the ICWA. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) We review the juvenile court's determination that the ICWA does not apply for substantial evidence. (*Ibid.*; § 224.2, subd. (i)(2).)

"'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a).) Whether or not

a child is a member or eligible for membership is conclusively determined by the tribe.  (§ 224.2, subd. (h).)

### *Required inquiries*

In dependency cases, the court and the department have "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child."  (§ 224.2, subd. (a).)  The process is divided into three phases:  an initial duty to inquire in all cases, a duty of further inquiry when there is *reason to believe* the child may be a tribal member or eligible for membership, and a duty to provide formal notice when there is *reason to know* the child is a member or eligible for membership.  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

"There is reason to know a child . . . is an Indian child" when:  (1) "[a] person having an interest in the child . . . informs the court that the child *is* an Indian child," (2) the child, parent, or Indian custodian lives on a reservation, (3) a designated person "informs the court that it has discovered information indicating that the child *is* an Indian child," (4) "[t]he child . . . gives the court reason to know that the child is an Indian child," (5) the child has been a ward of a tribal court, or (6) the parent or child has a tribal membership identification card. (§ 224.2, subd. (d), italics added.)  This definition of "reason to know," effective January 1, 2019, superseded the previous definition, which included a "'person having an interest in the child . . . provid[ing] information *suggesting* the child is a member of a tribe or eligible for membership.'" (*In re A.M., supra*, 47 Cal.App.5th at p. 316.)  Cases relying on the superseded language "'are no longer controlling or persuasive on this point.'"  (*In re D.F., supra*, 55 Cal.App.5th at p. 572.)

None of the circumstances constituting "reason to

know" apply here where the only information was that some of the children's ancestors were possibly Navajo or Mescalero. Although the court and department did "not have sufficient information to determine that there [was] *reason to know* that the child[ren] [were] Indian child[ren]," there was "*reason to believe*" they might be Indian children based on "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e), (e)(1), italics added.)[3]  Accordingly, the court or department was required to "make further inquiry" into the children's status "as soon as practicable," including interviewing family members, contacting the BIA, and contacting tribes that may have information.  (§ 224.2, subd. (e), (e)(2); Cal. Rules of Court, rule 5.481(a)(4).)

This is not a case where vague assertions of Indian heritage without specifics as to family members or tribes make further inquiry unnecessary.  (See *In re A.M.*, *supra*, 47 Cal.App.5th at p. 322.)  Further inquiry was required because the paternal grandmother provided the names of Father's ancestors whom she believed were Navajo or Mescalero Indians.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 295.)

### *Navajo Nation*

Mother contends it was unreasonable for the court to

---

[3] The language regarding "reason to believe" was added by legislation effective January 1, 2019 (Stats. 2018, ch. 833, § 5) and September 18, 2020 (Stats. 2020, ch. 104, § 15), before the court here found the ICWA inapplicable or terminated parental rights.  The amendments apply because the juvenile court had a continuing duty throughout the proceedings to inquire whether a child was an Indian child.  (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 321.)

6

proceed to a finding that the ICWA did not apply because the Navajo Nation requested more time to process its inquiry.  We disagree.

The court was not required to continue the case to allow the Navajo Nation to complete its verification process.  "A proceeding shall not be held until at least 10 days after receipt of notice by . . . the tribe."  (§ 224.3, subd. (d); 25 U.S.C. § 1912(a).)  On request, the court shall grant the tribe up to 20 additional days to prepare for the hearing.  (*Ibid*.)  After the Navajo Nation stated it needed more time, the court waited 85 days before determining the ICWA did not apply.  Proceeding without further delay was reasonable given the compelling need for prompt permanency determinations in dependency cases.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.)

### *Incomplete information*

Mother contends the inquiry was incomplete because information regarding some ancestors did not include their current or former addresses or place of death.  (§ 224.3, subd. (a)(5)(C); 25 C.F.R. § 23.111(d) (2020).)  She is incorrect.  This information, "if known," must be provided only when there is *reason to know* the child is an Indian child.  (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c).)  Formal notice was not required for the inquiry here, which was based on a *reason to believe* the children were Indian children.  (*In re A.M.*, *supra*, 47 Cal.App.5th at pp. 321-322; *In re D.F.*, *supra*, 55 Cal.App.5th at pp. 568-571.)  Instead, the further inquiry required "informal contact with the tribe."  (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.)

When it conducted its further inquiry, the department was required to "shar[e] information identified by the

tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).) The department provided sufficient information to constitute a "meaningful inquiry" of the tribes, including names, dates of birth, and other information regarding the children and ancestors. (*In re S.R.* (2021) 64 Cal.App.5th 303, 317.)

### *Required filings*

Mother contends remand is necessary because the department failed to file copies of the ICWA-030 forms mailed in September or return receipts for those forms. Again, we disagree.

The record includes a Notice of Hearing on Selection of a Permanent Plan (§ 366.26) with proofs of service on the tribes. This notice did not provide or request information regarding tribal membership. But the department also filed court reports stating that it sent a second set of ICWA-030 forms to the tribes in September. It filed for each tribe a signed receipt, United States Postal Service (USPS) tracking information showing delivery, and/or responsive letter.

Section 224.3, subdivision (c), provides, "Proof of the notice, including copies of notices sent and all return receipts and responses received, shall be filed with the court in advance of the hearing . . . ." This requirement applies when notice is sent because there is "reason to know" an Indian child is involved. (§ 224.3, subd. (a); 25 C.F.R. § 23.111(a) (2020).) It does not apply to the inquiry here, which was based on "reason to believe" Indian children might be involved.

A copy of the August ICWA-030 form was filed. Although a copy of the September form and some of the return receipts and responsive letters were not filed, the department's

reports summarizing the mailings and the other filed documents were sufficient to show it contacted the potential tribes as part of its inquiry.

### *Improper service*

Mother contends that a remand is required because some of the notices were sent to addresses or individuals that deviated from the most current Federal Register list. (85 Fed.Reg. 24004 (Apr. 30, 2020).)[4] We do not agree.

The Federal Register gave the address of the Colorado River Indian Tribes as: Rebecca Loudbear, Attorney General, 26600 Mohave Rd., Parker, AZ 85344. The department sent notice to the Attorney General without including her name and used a street address from an earlier list (81 Fed.Reg. 10887 (Mar. 2, 2016)). The tribe returned the certified mail receipt. The fact that the notice was addressed to the Attorney General shows that notice was sent to "someone trained and authorized to make the necessary ICWA determinations" and not "an unidentified person at the tribe's address." (*In re J.T.* (2007) 154 Cal.App.4th 986, 994.) The absence of a substantive response is not prejudicial because, as stated in the letter of the Ramah Navajo School Board, the complete Navajo census records are kept by the Navajo Nation.

The notice to the Mescalero Apache Tribe gave a different post office box number and gave the name of the Tribal Census Clerk as Crystal Garcia rather than Crystal Lester. The tribe's ICWA Case Manager, Augusta Williams, responded that the children were not members or eligible for membership.

---

[4] The BIA publishes an annual list of names and addresses of tribal agents for service of ICWA notice. (25 C.F.R. §§ 23.12, 23.105(a) (2020).)

Notice to the San Carlos Apache Tribe was correctly addressed and was acknowledged in a return receipt and a letter stating that there was no evidence the parents or children were enrolled or eligible for enrollment.

Notice to four other Apache tribes (Apache Tribe of Oklahoma, Fort Sill Apache Tribe of Oklahoma, Tonto Apache Tribe of Arizona, and Yavapai-Apache Nation) was mailed to addresses that differed from the Federal Register list or named different individuals, but those notices resulted in letters stating that the children were not eligible for enrollment or membership. Notice to the Jicarilla Apache Nation was sent to the ICWA Department at an outdated post office box number and omitted the name of the ICWA Specialist, but USPS tracking shows it was delivered. Notice to the ICWA Representative of White Mountain Apache Tribe named a different person, but a return receipt was received.

Notice to the tribal chairperson or designated agent for service is required when there is reason to know that an Indian child is involved. (§ 224.3, subd. (a), (a)(2); see 25 C.F.R. § 23.105 (2020) [inquiry "should" be directed to BIA list in Federal Register].) Strict compliance was not required here. *In re J.T.*, *supra*, 154 Cal.App.4th 986, 994-995, which held that notice must be sent to the tribal chairperson or designated agent for service, preceded the 2019 and 2020 amendments to section 224.2. Any discrepancies were harmless here because the notices were received by ICWA representatives of the tribes identified by Father's family, and the responses disclosed no reason to know the children were Indian children. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402-403; *In re N.M.* (2008) 161 Cal.App.4th 253, 268.)

10

### *Substantial evidence*

In light of her arguments discussed above, Mother contends that the juvenile court's finding that the ICWA did not apply was unsupported by substantial evidence. We conclude otherwise.

"If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the [ICWA] does not apply to the proceedings." (§ 224.2, subd. (i)(2).) Substantial evidence shows the department and the court conducted a diligent good faith inquiry. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 570.) Accordingly, the court did not err in concluding the ICWA was inapplicable.

### DISPOSITION

The appeal regarding A.P. (20JV00054) is dismissed. The order terminating parental rights as to I.E. (20JV00051) and S.P. (20JV00053) is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.          YEGAN, J.

11

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.